| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-88 |
| SHAWANDA NEVERS | SECTION: "E"(1) |

## ORDER AND REASONS

Before the Court is Petitioner Shawanda Nevers' Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (hereinafter, Petitioner's "2255 Motion").[1] The Government opposes the motion.[2] Petitioner filed a reply.[3] For the following reasons, Petitioner's 2255 Motion is **DENIED**.

## BACKGROUND

On May 6, 2016, a grand jury indicted Shawanda Nevers for: 37 counts of aiding or assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2); one count of criminal contempt, in violation of 18 U.S.C. § 401(3); one count of bank fraud, in violation of 18 U.S.C. § 1344(2); and one count of forging the signature of a federal judge, in violation of 18 U.S.C. § 505.[4] A superseding indictment was later returned, adding one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.[5]

After her arrest, Petitioner retained Eddie J. Jordan, Jr. as her counsel of record.[6] On May 12, 2016, Mr. Jordan represented Petitioner at her arraignment proceeding

---

[1] R. Docs. 161.
[2] R. Doc. 166.
[3] R. Doc. 167.
[4] R. Doc. 3.
[5] R. Doc. 56.
[6] R. Doc. 13, 17.

before Magistrate Judge Sally Shushan.[7] The Government moved for Petitioner to be detained pending trial.[8] Mr. Jordan requested a special period of release to permit Petitioner to attend her father's funeral.[9] At Mr. Jordan's request,[10] a detention hearing was held before Magistrate Judge Shushan on the following day, May 13, 2016.[11] Mr. Jordan called Petitioner's husband, Daryl Alex and cross-examined the Government's witness, James Aime, Jr.[12] Magistrate Judge Shushan ordered Petitioner detained, but granted Petitioner's request for temporary release to attend her father's funeral.[13] On June 6, 2016, Mr. Jordan filed a motion to reopen Petitioner's detention hearing,[14] which Judge Shushan denied.[15]

On June 21, 2016, Mr. Jordan filed a motion to continue the pre-trial conference and trial, citing his need to thoroughly review the voluminous discovery, file discovery motions, and file a motion to suppress evidence.[16] The Court granted this motion.[17] On August 18, 2016, Mr. Jordan filed a second motion to continue the pre-trial conference and trial, citing his need to complete additional discovery and file the discovery motions and the motion to suppress evidence.[18] The Court granted this motion.[19] On October 17, 2016, Mr. Jordan filed a motion seeking the Court's consent to conduct a Rule 15 deposition of a witness, Daryl Becnel.[20] The Court granted this motion.[21]

---

[7] R. Doc. 31.
[8] *Id.* at 6.
[9] *Id.* at 6-7.
[10] *Id.* at 7.
[11] R. Doc. 32.
[12] *Id.*
[13] *Id.*
[14] R. Doc. 26.
[15] R. Doc. 29.
[16] R. Doc. 28.
[17] R. Doc. 30.
[18] R. Doc. 45.
[19] R. Doc. 46.
[20] R. Doc. 51.
[21] R. Doc. 52.

On November 18, 2019, Petitioner, through Mr. Jordan, filed a motion to conduct a hearing to determine counsel of record.[22] The motion stated, in pertinent part:

> The defendant recently complained to the bar association about the timeliness of undersigned counsel's preparation and filing of a motion to suppress that the defendant has instructed undersigned counsel to file and undersigned counsel's determination not to file a motion for a speedy trial that the defendant has also ordered undersigned counsel to file. Undersigned counsel avers that the defendant's complaints are without a basis in fact or law. Further, undersigned counsel avers, on information and belief, following a conference with the defendant, the defendant now asserts that her complaints have been addressed and resolved to her satisfaction. Nonetheless, it is necessary that the defendant state on the record whether or not she is satisfied with the services provided by undersigned counsel and whether she wishes that undersigned counsel continue to represent her. Further, undersigned counsel avers that following the indictment of the defendant's husband, Daryl Alex, the defendant is without adequate financial resources to pay undersigned counsel for further pre-trial services and possible trial services, and therefore a hearing must be conducted to determine whether she meets the legal requirements for a court appointed attorney.[23]

On November 30, 2016, a hearing was held before Magistrate Judge Michael North, who ordered that Mr. Jordan would remain counsel of record.[24]

On December 12, 2019, Mr. Jordan filed a motion to suppress evidence,[25] arguing: (1) "[l]aw enforcement officers engaged in illegal actions, improprieties, and irregularities that fatally tainted all searches and seizures in this case"[26]; (2) "[o]n December 20, 2013 and on March 19, 2014, Ms. Nevers did not voluntarily consent to the search of her business, and therefore the warrantless search of her business on those dates was unreasonable, unjustifiable, and invalid"[27]; and (3) "[a]ll evidence derived indirectly as a result of the government's warrantless search of Ms. Nevers' business must be

---

[22] R. Doc. 70.
[23] *Id.* at 1-2.
[24] R. Doc. 75.
[25] R. Doc. 76.
[26] R. Doc. 76-1 at 2-4.
[27] *Id.* at 5-7.

suppressed."[28] On December 20, 2019, Mr. Jordan filed a request for oral argument on the motion to suppress evidence,[29] which the Court granted.[30]

On January 27, 2017, Petitioner, through Mr. Jordan, filed a second motion to determine counsel of record.[31] The motion stated, in pertinent part:

> On information and belief, undersigned counsel avers that since the indictment of the defendant's husband, Daryl Alex, the defendant is without adequate financial resources to pay undersigned counsel for further pre-trial services and trial services, and therefore a hearing must be conducted to determine whether she meets the legal requirements for a court-appointed attorney.[32]

Petitioner filed a memorandum in support of her second unopposed motion to conduct hearing to determine counsel of record, stating:

> Undersigned counsel underscores that in or about October 2016, the defendant complained to the bar association about the timeliness of undersigned counsel's preparation and filing of a motion to suppress. Further, in her complaint, Mrs. Nevers took exception to undersigned counsel's determination not to file a motion for a speedy trial. On December 27, 2016, the bar association found that there is insufficient proof to support a finding that undersigned counsel engaged in unethical conduct. Significantly, however, the defendant did not formally withdraw her bar complaint or advise the bar association that her complaint has been addressed by undersigned counsel and resolved to her satisfaction.
>
> . . .
>
> It is now abundantly clear that undersigned counsel and the defendant have very different ideas about the kind of defense that should be presented, including the kind of legal and factual arguments that should be made, to achieve the best result. Undersigned counsel and the defendant have therefore developed serious and irreconcilable differences and, as a result, the attorney-client relationship between undersigned counsel and the defendant has been irreparably impaired. Accordingly, it is appropriate and necessary for [Petitioner] to have new counsel.[33]

---

[28] *Id.* at 7-8.
[29] R. Doc. 81.
[30] R. Doc. 83.
[31] R .Doc. 84.
[32] *Id.* at 1.
[33] R. Doc. 90 at 1-2.

On February 8, 2017, a hearing on Petitioner's second motion to determine counsel of record was held before Magistrate Judge North, who ordered Mr. Jordan be withdrawn as Petitioner's counsel of record.[34] Also on February 8, 2017, the Federal Public Defender was appointed to represent Petitioner, and Jerrod Edward Thompson-Hicks enrolled to represent Petitioner.[35]

On February 15, 2017, Mr. Thompson-Hicks filed a motion to continue the pre-trial conference and trial, to allow him "additional time to meet with the defendant, review the case and to prepare for the trial in this matter."[36] The Court granted this motion.[37]

On March 17, 2017, Mr. Thompson-Hicks filed a motion to continue the suppression hearing because "further time is necessary to continue to meet with the defendant at the St. Charles Parish jail, to review voluminous discovery, and to prepare for the hearing on the motion to suppress evidence filed by defendant's former counsel of record."[38] On April 25, 2017, Mr. Thompson-Hicks filed another motion to continue the suppression hearing.[39] The Court granted both motions.[40]

On May 22, 2017, Mr. Thompson-Hicks filed a motion to continue the pre-trial conference and trial to permit time to "to explore the possibility of a pretrial resolution of this matter" and "continue to meet with the defendant at the St. Charles Parish jail, to review voluminous discovery, and to prepare for trial in this matter."[41] The Court granted this motion.[42]

---

[34] R. Doc. 91.
[35] R. Doc. 92.
[36] R. Doc. 95 at ¶ 4.
[37] R. Doc. 97.
[38] R. Doc. 99 at ¶ 1.
[39] R. Doc. 101.
[40] R. Docs. 100 and 102.
[41] R. Doc. 103 at ¶ 1.
[42] R. Doc. 104.

On May 25, 2017, Mr. Thompson-Hicks filed another motion to continue the suppression hearing,[43] which the Court granted.[44]

Mr. Thompson-Hicks represented Plaintiff at her re-arraignment proceeding on August 3, 2017.[45] Petitioner pleaded guilty to four counts of aiding and assisting in the preparation of false tax returns (Counts 17, 23, 28, and 29).[46] In exchange for Plaintiff's agreement to plead guilty to these four charges, the Government agreed to dismiss the remaining counts in the superseding indictment and the original indictment.[47] At the re-arraignment, the Court explained to Petitioner the maximum sentence that could be imposed for the four counts:

> THE COURT: Ms. Nevers, the maximum possible sentence that could be imposed on you in the event of a conviction with respect to each of Counts 17, 23, 28 and 29, either upon a plea of guilty or after a trial at which you are found guilty, is a three-year term of imprisonment, a one year term of supervised release and a fine of $250,000 or the greater of twice the gross gain to you or twice the gross loss to another person or both. . . Ms. Nevers, do you understand that even if the Court accepts your plea of guilty, the Court could impose the maximum possible sentence that I have just related to you?
>
> THE DEFENDANT: Yes, ma'am.[48]

The Court also questioned Petitioner and Mr. Thompson-Hicks regarding representations made to Petitioner by Mr. Thompson-Hicks:

> THE COURT: Have the sentencing guidelines applicable to your case been explained to you by your counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .

---

[43] R. Doc. 106.
[44] R. Doc. 107.
[45] R. Doc. 109.
[46] 26 U.S.C. § 7206(2).
[47] R. Doc. 111 (Plea Agreement).
[48] R. Doc. 152 at 7-8.

THE COURT: Mr. Thompson-Hicks, other than rough estimates of the sentencing guidelines, have you made any representations to Ms. Nevers as to the sentence I will impose?

MR. THOMPSON-HICKS: No, Your Honor.

THE COURT: Ms. Nevers, to the best of your knowledge is what your attorney just said correct?

THE DEFENDANT: Yes.

THE COURT: Do you understand that any discussions with your attorney or anyone else regarding sentencing guidelines have been merely rough estimates and that the Court is not bound by those discussions?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone connected with the government, anyone connected with any law enforcement agency or anyone else at any time, other than those rough estimates of the sentencing guidelines, made any prediction or promise to you as to what your sentence will be?

THE DEFENDANT: No, ma'am.[49]

The Court questioned Petitioner and Mr. Thompson-Hicks regarding the accuracy of the

Plea Agreement:

THE COURT: Ms. Nevers, have you seen this document before?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is there anything in this document that you do not understand?

THE DEFENDANT: No, ma'am.

THE COURT: Is it factually correct in what it says you did?

THE DEFENDANT: Yes, ma'am.

THE COURT: Ms. Nevers, do you understand the government's evidence against you?

THE DEFENDANT: Yes, ma'am.

---

[49] *Id.* at 8-9.

THE COURT: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you entirely satisfied with the advice and services of your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you wish to ask or have your attorney ask the U.S. Attorney any questions at this time about any of the things we have discussed?

THE DEFENDANT: No, ma'am.

THE COURT: Mr. Thompson Hicks, have you had full opportunity to investigate the facts of and the law applicable to this case as well as any possible defenses your client may have and to advise and counsel with your client?

MR. THOMPSON-HICKS: I have, Your Honor.

THE COURT: Ms. Nevers, to the best of your knowledge is what your attorney just said correct?

THE DEFENDANT: Yes.[50]

Before accepting Petitioner's guilty plea, the Court questioned Petitioner and Mr. Thompson-Hicks as follows:

THE COURT: Mr. Thompson-Hicks, are you satisfied that Ms. Nevers is pleading guilty voluntarily and understandingly and with full knowledge of her plea?

MR. THOMPSON-HICKS: I am, Your Honor.

THE COURT: Ms. Nevers, let me ask you again, do you fully understand the charges against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you fully understand the consequences of your guilty plea?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you pleading guilty because you are, in fact, guilty?

---

[50] *Id.* at 19-21.

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, ma'am.

THE COURT: Although you have indicated all through these proceedings a desire to plead guilty, do you realize you still have the right to maintain a plea of not guilty at this time?

THE DEFENDANT: Yes, ma'am.[51]

In her Plea Agreement, Petitioner confirmed her understanding of the maximum sentence that could be imposed:

> The defendant understands that, should the defendant's plea of guilty be accepted, the maximum penalty the defendant may receive as to each of Counts 17, 23, 28, and 29 is 3 years of imprisonment and a fine of $250,000 or the greater of twice the gross gain to the defendant or twice the gross loss to any person under Title 18, United States Code, Section 3571, or both.[52]

Petitioner also waived her right to directly appeal her conviction and the right to collaterally attack her sentence under § 2255, except with regard to ineffective assistance of counsel claims:

> [S]ubject only to the exceptions indicated in subsection (d) below, the defendant, in exchange for the promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily:
>
> a.     Waives and gives up any right to appeal or contest the defendant's guilty plea, conviction, sentence, fine, supervised release, and any restitution imposed by any judge under any applicable statute. . .;
>
> b.     Waives and gives up any right to appeal any order, decision, or judgment arising out of or related to Title 18, United States Code 3582(c)(2) . . . and further waives and gives up any right to challenge the manner in which the defendant's sentence was determined and to challenge any United States Sentencing Guidelines determinations. . .;

---

[51] *Id.* at 21-22.
[52] R. Doc. 111 at 2.

c.      Waives and gives up any right to challenge the defendant's sentence collaterally, including but not limited to any and all rights which arise under title 28, United States Code, Sections 2255 and 2241. . .;

d.      The defendant . . . retains the right to raise a claim of ineffective assistance of counsel in an appropriate proceeding.[53]

On December 13, 2017, Petitioner was sentenced on Counts 17, 23, 28, and 29.[54] At sentencing, Petitioner was represented by Mr. Thompson-Hicks.[55] The Government requested a sentence be imposed within the U.S. Sentencing Guidelines (the "USSG") range of 84 to 105 months.[56] Mr. Thompson-Hicks filed a sentencing memorandum on Petitioner's behalf.[57] At the sentencing, Mr. Thompson-Hicks argued for a downward variance based on factors including Petitioner's declining health, her acceptance of responsibility, and her need to make restitution.[58] Mr. Thompson-Hicks also requested the Court take into consideration the fact that she had already been incarcerated for 19 months.[59] The Court sentenced Petitioner to 84 months (21 months as to each count, to be served consecutively), the bottom end of the USSG range.[60] The Court also ordered that Petitioner's federal sentence run concurrently with her state sentence of 12 years.[61]

Although Petitioner waived her right to directly appeal her conviction and the right to collaterally attack her sentence under § 2255,[62] she appealed her sentence.[63] The Fifth

---

[53] *Id.* at 4.
[54] R. Doc. 135.
[55] *Id.*
[56] R. Doc. 151 at 13-16.
[57] R. Doc. 132.
[58] R. Doc. 151 at 11-13.
[59] *Id.*
[60] *Id.* at 20.
[61] *Id.*
[62] R. Doc. 111 at 4.
[63] R. Doc. 137.

Circuit dismissed Petitioner's appeal, holding Petitioner's "guilty plea was knowing and voluntary, and her appeal waiver is enforceable."[64]

On September 26, 2019, Petitioner filed the instant 2255 Motion.[65] Petitioner raises several ineffective assistance of counsel claims as well as several substantive claims related to her re-arraignment and sentencing.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the court that imposed her sentence to vacate, set aside or correct the sentence.[66] Only a narrow set of claims are cognizable on a Section 2255 motion. The statute identifies four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."[67] A claim of error that is neither constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."[68]

When a Section 2255 motion is filed, the district court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . ."[69] If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action.[70] The

---

[64] *United States v. Nevers*, 755 F. App'x 426 (5th Cir. 2019).
[65] R. Doc. 161.
[66] 28 U.S.C. § 2255(a).
[67] *Id.*; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).
[68] *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).
[69] Rules Governing Section 2255 Proceedings, Rule 4(b).
[70] *Id.*

court may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery.[71]

After reviewing the Government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted.[72] An evidentiary hearing must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[73] No evidentiary hearing is required if the defendant fails to produce any "independent indicia of the likely merit of [her] allegations."[74,75]

Ultimately, the Defendant bears the burden of establishing her claims of error by a preponderance of the evidence.[76] For certain "structural" errors, relief follows automatically once the error is proved.[77] For other "trial" errors, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case.[78] If the court finds that the defendant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence [her] or grant a new trial or correct the sentence as may appear appropriate."[79]

---

[71] *Id.*, Rules 6-7.
[72] *Id.*, Rule 8.
[73] 28 U.S.C. § 2255(b).
[74] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).
[75] The Court denied Defendant's request for an evidentiary hearing in this case. R. Doc. 213.
[76] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).
[77] *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993).
[78] *Id.* at 637-38 (citation omitted); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding).
[79] 28 U.S.C. § 2255(b).

<u>**ANALYSIS**</u>

**I.    Substantive Claims Related to Re-arraignment and Sentencing**

Petitioner raises several substantive claims related to her re-arraignment and sentencing, including: (1) the district court erred in "prevent[ing]" Petitioner from speaking at her re-arraignment[80]; (2) her sentence was "substantively unreasonable" because Petitioner's "criminal history computation came from sentences resulting from convictions that have been because errors of the law"[81] and the "tax loss amount" was incorrect[82]; (3) "prosecutorial misconduct" by, for instance, "threaten[ing] to prosecute her disabled daughter, eldest daughter and husband"[83] and withholding evidence in an unrelated state trial[84]; (4) Fourth Amendment claims, such as "[t]he federal agent . . . maliciously obtained a search warrant for the [Petitioner's] restaurant premises" based on the agent's "frivolous" affidavit[85]; and (5) judicial bias, namely, "the contempt charge was because they said that Ms. Nevers had defied Judge Morgan order."[86] For the following reasons, the Court finds Petitioner waived these claims in her plea agreement and at her re-arraignment, and, further, the majority of these claims are procedurally barred.

**A.    Waiver**

A defendant may waive her right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement, so long as the waiver is both

---

[80] R. Doc. 161 at 18.
[81] *Id.* at 44.
[82] *Id.* at 44-45.
[83] *Id.* at 8.
[84] *Id.* at 46.
[85] *Id.* at 33-37.
[86] *Id.* at 41-42.

knowing and voluntary.[87] A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the specific detailed consequences of invoking it."[88] "The Constitution does not require a great deal of knowledge on the part of the defendant."[89] "If the defendant is aware of the potential maximum prison term and fine for the offense charged, but nevertheless pleads guilty, [her] plea is knowingly and intelligently entered."[90] "As long as [the defendant] understood the length of the time [s]he might possibly receive, [s]he was fully aware of [her] plea's consequences."[91]

A defendant's waiver is involuntary if "induced by threats, misrepresentations, or improper promises, such as bribes."[92] The Constitution requires that guilty pleas be made "voluntarily" and their attendant waivers made "'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'"[93] A plea is intelligent when the defendant enters it after receiving "real notice of the true nature of the charge against [her], the first and most universally recognized requirement of due process."[94] In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against [her], and not necessarily whether [s]he understood their technical legal effect."[95] The Supreme Court's

---

[87] *See e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (holding that a "knowing and voluntary" standard applies to a waiver of appeal); *United States v. McKinney*, 406 F .3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contact interpretation when construing plea agreements."); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).
[88] *United States v. Ruiz*, 536 U.S. 622, 630 (2002).
[89] *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).
[90] *United States v. Scott*, 857 F.3d 241, 245 (5th Cir. 2017) (citing *Guerra*, 94 F.3d at 995).
[91] *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990).
[92] *Scott*, 857 F.3d at 245 (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)).
[93] *Ruiz*, 536 U.S. at 629 (quoting *Brady*, 397 U.S. at 748).
[94] *Bousley v. United States*, 523 U.S. 614, 628 (1998).
[95] *Taylor v. Whitney*, 933 F.2d 325, 329 (5th Cir. 1991).

decision in *Boykin v. Alabama*[96] "requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made."[97] "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that [s]he understands the law of [her] crime in relation to the facts of [her] case, as well as [her] rights as a criminal defendant."[98] "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them."[99] "However, a determination of whether a defendant understands the consequences of [her] guilty plea, including the waiver of [her] right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences; the court must only ascertain whether the defendant has a realistic or reasonable understanding of [her] plea."[100]

"When a petition does not allege, and the record contains no indication that ratification of the plea agreement was not 'voluntary' or knowledgeable, the Court will hold the defendant to the bargain that he made—the Court need not presume that the waiver was ineffective."[101] Further, "when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands [her] plea agreement, and that [s]he raised no question regarding a waiver-of-appeal provision, the defendant will be held to

---

[96] 395 U.S. 238 (1969).
[97] *Matthew v. Johnson*, 201 F.3d 353, 368 n. 22 (5th Cir. 2000).
[98] *United States v. Vonn*, 535 U.S. 55, 62 (2002).
[99] *Id.* at 78 (Stevens, J., concurring).
[100] *United States v. Potter*, Criminal Action No. 13–141, 2015 WL 3486446, at *2 (E.D. La. June 1, 2015) (citing *United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea")).
[101] *Potter*, 2015 WL 3486446 at *1 (citing *White*, 307 F.3d at 343; *Bond*, 414 F.3d at 544).

the bargain to which he agreed, regardless of whether the court specifically admonished [her] concerning the waiver of appeal."[102]

In this case, Petitioner entered into a Plea Agreement wherein she waived her right to:

> 1) "[A]ppeal or contest [her] guilty plea, conviction, sentence, fine, supervised release, and any restitution . . . including but not limited to any right to appeal any rulings on pretrial motions of any kind whatsoever, as well as any aspect of the defendant's sentence. . ."[103];
>
> 2) "[A]ppeal any order, decision, or judgment arising out of or related to Title 18, United States Code, Section 3582(c)(2) imposed by any judge and further waives and gives up any right to challenge the manner in which the defendant's sentence was determined and to challenge any United States Sentencing Guidelines determinations and their application by any judge to the defendant's sentence and judgment"[104]; and
>
> 3) "[A]ny right to challenge [her] sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code Sections 2255 and 2241. . ."[105]

The Court finds Petitioner knowingly waived these rights, which include the right to collaterally attack her sentence on a 2255 motion. During Petitioner's re-arraignment, the Court explained to Petitioner the maximum sentence that could be imposed for the four counts, and Petitioner acknowledged she understood the maximum sentence:

> THE COURT: Ms. Nevers, the maximum possible sentence that could be imposed on you in the event of a conviction with respect to each of Counts 17, 23, 28 and 29, either upon a plea of guilty or after a trial at which you are found guilty, is a three-year term of imprisonment, a one year term of supervised release and a fine of $250,000 or the greater of twice the gross gain to you or twice the gross loss to another person or both. . . Ms. Nevers, do you understand that even if the Court accepts your plea of guilty, the Court could impose the maximum possible sentence that I have just related to you?

---

[102] *United States v. Portillo*, 18 F.3d 290, 292–93 (5th Cir.1994); *McKinney*, 406 F.3d at 746; *Bond*, 414 F.3d at 544.
[103] R. Doc. 111 at 4.
[104] *Id.*
[105] *Id.*

THE DEFENDANT: Yes, ma'am.[106]

Further, in her Plea Agreement, Petitioner confirmed her understanding of the maximum sentence that could be imposed:

> The defendant understands that, should the defendant's plea of guilty be accepted, the maximum penalty the defendant may receive as to each Counts 17, 23, 28, and 29 is 3 years of imprisonment and a fine of $250,000 or the greater of twice the gross gain to the defendant or twice the gross loss to any person under Title 18, United States Code, Section 3571, or both.[107]

The Court likewise finds Petitioner voluntarily waived these rights. During Petitioner's re-arraignment, the Court thoroughly questioned Petitioner to ensure she understood the nature and substance of the charges against her. For instance, the Court inquired:

> THE COURT: Have the sentencing guidelines applicable to your case been explained to you by your counsel?
>
> THE DEFENDANT: Yes, ma'am.

The Court also questioned Petitioner regarding her understanding of the Plea Agreement:

> THE COURT: Ms. Nevers, have you seen this document before?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Is there anything in this document that you do not understand?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Is it factually correct in what it says you did?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Ms. Nevers, do you understand the government's evidence against you?
>
> THE DEFENDANT: Yes, ma'am.

---

[106] R. Doc. 152 at 7-8.
[107] R. Doc. 111 at 2.

THE COURT: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have?

THE DEFENDANT: Yes, ma'am.

Before accepting Petitioner's guilty plea, the Court questioned Petitioner and Mr. Thompson-Hicks as follows:

THE COURT: Mr. Thompson-Hicks, are you satisfied that Ms. Nevers is pleading guilty voluntarily and understandingly and with full knowledge of her plea?

MR. THOMPSON-HICKS: I am, Your Honor.

THE COURT: Ms. Nevers, let me ask you again, do you fully understand the charges against you?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you fully understand the consequences of your guilty plea?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you pleading guilty because you are, in fact, guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, ma'am.

THE COURT: Although you have indicated all through these proceedings a desire to plead guilty, do you realize you still have the right to maintain a plea of not guilty at this time?

THE DEFENDANT: Yes, ma'am.[108]

Moreover, the Fifth Circuit has already held Petitioner's waiver was made knowingly and voluntarily, holding:

As Nevers acknowledges, the district court accurately informed her at rearraignment that three years was 'the maximum possible sentence that could be imposed on [her] in the event of a conviction with respect to each of' the four counts of conviction. Under 18 U.S.C. § 3584(a), a district court generally has

---

[108] R. Doc. 152 at 21-22.

discretion to order that multiple prison terms run consecutively, and we have 'conclude[d] that the effect of [§ 3584] is not a consequence of which a defendant must be advised before a guilty plea may be accepted.'

In light of the foregoing, Nevers's guilty plea was knowing and voluntary, and her appeal waiver is enforceable.[109]

Petitioner's waiver is enforceable, and, as a result, Petitioner waived her right to bring the following substantive claims related to re-arraignment and sentencing in a 2255 motion: (1) the district court erred in "prevent[ing]" Petitioner from speaking at her re-arraignment[110]; (2) her sentence was "substantively unreasonable" because Petitioner's "criminal history computation came from sentences resulting from convictions that have been because errors of the law"[111] and the "tax loss amount" was incorrect[112]; (3) "prosecutorial misconduct" by, for instance, "threaten[ing] to prosecute her disabled daughter, eldest daughter and husband"[113] and withholding evidence in an unrelated state trial[114]; (4) Fourth Amendment claims, such as "[t]he federal agent . . . maliciously obtained a search warrant for the [Petitioner's] restaurant premises" based on the agent's "frivolous" affidavit[115]; and (5) judicial bias, namely, "the contempt charge was because they said that Ms. Nevers had defied Judge Morgan order."[116] Petitioner did not waive her right to claim ineffective assistance of counsel.[117]

---

[109] *Nevers*, 755 F. App'x. at 426-27 (citing 26 U.S.C. § 7206(2) and *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997); quoting *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000)).
[110] R. Doc. 161 at 18.
[111] *Id.* at 44.
[112] *Id.* at 44-45.
[113] *Id.* at 8.
[114] *Id.* at 46.
[115] *Id.* at 33-37.
[116] *Id.* at 41-42.
[117] R. Doc. 111 at 4 (Plea Agreement).

### B.    Procedural Default

Notwithstanding Petitioner's waiver, her substantive claims are also barred as procedurally defaulted.

"After conviction and exhaustion or waiver of any right to appeal, '[the Court is] entitled to presume that the defendant stands fairly and finally convicted.'"[118] "A defendant can challenge [her] conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both 'cause' for [her] procedural default, and 'actual prejudice' resulting from the error."[119] "This cause and actual prejudice standard presents 'a significantly higher hurdle' than the "plain error" standard that [courts] apply on direct appeal."[120] "If the error is not of constitutional or jurisdictional magnitude, the defendant must show that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice."[121]

In this case, Petitioner directly appealed her sentence, arguing "that she is entitled to resentencing because the district court plainly erred in determining the tax loss amount on which her guidelines sentence was based."[122] The Fifth Circuit, upon finding that Petitioner's "guilty plea was knowing and voluntary, and her appeal waiver is enforceable," dismissed Petitioner's appeal.[123] In the instant 2255 Motion, to the extent not raised on appeal, Petitioner fails to make the requisite showing of either "cause" and "actual prejudice" for errors of constitutional or jurisdictional magnitude or "inability to

---

[118] *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982))
[119] *Id.* at 232) (citing *Hill*, 368 U.S. at 428; *Frady*, 456 U.S. at 168).
[120] *Id.* (quoting *Frady* 456 U.S. at 166).
[121] *Id.* at 232 n.7 (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).
[122] *Nevers*, 755 F. App'x. at 426.
[123] *Id.* at 427.

raise on direct appeal" and "complete miscarriage of justice" for other errors. As a result, Petitioner's substantive claims related to re-arraignment and sentencing are procedurally defaulted.

To the extent Petitioner challenges her sentence in the instant 2255 Motion by claiming the tax loss was wrongly calculated, this claim is also procedurally barred because Petitioner raised this claim on appeal and "[i]t is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."[124]

## II.    Ineffective Assistance of Counsel

Petitioner claims her attorneys, Mr. Jordan and Mr. Thompson-Hicks, provided ineffective assistance of counsel during pretrial proceedings, re-arraignment, and sentencing. In her plea agreement, Petitioner specifically did not waive her right "to raise a claim of ineffective assistance of counsel in an appropriate proceeding."[125] Further, Petitioner is not procedurally barred from raising these ineffective assistance claims because the Supreme Court of the United States has held "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."[126]

The Fifth Circuit has explained that "[i]n a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof."[127] Further, to prove a valid claim for ineffective assistance of counsel, the petitioner must demonstrate both prongs

---

[124] *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980)).
[125] R. Doc. 111 at 4.
[126] *Massaro v. United States*, 538 U.S. 500, 509 (5th Cir. 2003).
[127] *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994)).

of the test set forth in *Strickland v. Washington*.[128] As a result, Petitioner must show that: (1) her counsel's performance was deficient and (2) her counsel's deficient performance prejudiced her defense.[129]

With respect to the first prong of the *Strickland* test, the Court "compare[s] counsel's performance to an objective standard of reasonableness, mindful of the strong presumption of adequacy."[130] "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'"[131] In *Strickland*, the Supreme Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[132]

As a result, district courts should "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy."[133]

With respect to the second prong of the *Strickland* test, the petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[134] In *Armstead v. Scott*,

---

[128] 466 U.S. 668, 687 (1984).
[129] *See id.*
[130] *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).
[131] *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)).
[132] *Strickland*, 466 U.S. at 689.
[133] *Id.* (citation and internal quotation marks omitted).
[134] *Strickland*, 466 U.S. at 694.

the Fifth Circuit explained that a petitioner must do more than merely allege prejudice: "[A] defendant must 'affirmatively prove' prejudice. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test. A petitioner must establish that but for her counsel's alleged erroneous advice, she would not have pleaded guilty, but would have insisted upon going to trial."[135]

As the Supreme Court explained in *Strickland*, if the Court finds the petitioner has made an insufficient showing with respect to either of the two required prongs, the Court may dispose of the claim.[136] Further, the Supreme Court advised that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of insufficient prejudice, which we expect will often be so, that course should be followed."[137]

### A.     Pretrial Proceedings

Petitioner argues her counsel was ineffective during pretrial proceedings. Specifically, Petitioner asserts Mr. Jordan was ineffective because he filed a "frivolous" motion to reopen Petitioner's bail hearing, failed to file a motion for speedy trial, failed to timely file a motion to suppress evidence,[138] and failed to file a motion for this district judge to recuse herself.[139] Petitioner alleges both Mr. Jordan and Mr. Thompson-Hicks were ineffective in preparing and pursuing her motion to suppress.[140]

The Court will first consider Petitioner's claims solely concerning Mr. Jordan. With respect to the first *Strickland* prong, Petitioner fails to establish Mr. Jordan's performance was deficient. Rather, Mr. Jordan's decisions regarding bail, speedy trial,

---

[135] 37 F.3d 202, 206 (5th Cir. 1994) (internal citations omitted).
[136] *Strickland*, 466 U.S. at 697.
[137] *Id.*
[138] R. Doc. 161 at 6-8.
[139] *Id.* at 41-42.
[140] *Id.* at 23.

and recusal are the types of "conscious and informed decision[s] on trial tactics and strateg[ies]" that courts will not second guess.

As the Government points out in its response, even if Mr. Jordan's motion to reopen Petitioner's detention hearing was ultimately unsuccessful in securing Petitioner pre-trial release, it "afforded Nevers a second opportunity to present evidence that she was not a flight-risk or danger to her community."[141] Because Petitioner did not obtain the maximum relief sought in her first detention hearing, unconditional release, the Court cannot say Mr. Jordan's decision to file a motion to reopen the detention hearing failed to comport with an objective standard of reasonableness.

Likewise, Mr. Jordan's decision to file motions to continue instead of a motion for speedy trial were reasonable. "[C]ounsel's choice of arguments to support the motion to continue falls squarely within the ambit of trial strategy."[142] Similarly, counsel's choice to file a motion to continue to effectively prepare for trial falls squarely within the ambit of trial strategy. The Speedy Trial Act, 18 U.S.C. § 3161, permits continuances to allow "reasonable time necessary for effective preparation, taking into account the exercise of due diligence."[143] Each time Mr. Jordan requested to continue trial, the Court found a continuance was necessary to permit counsel "reasonable time necessary for effective preparation should the matter proceed to trial, taking into account the exercise of due diligence."[144] Petitioner's allegations fail to overcome the strong presumption that Mr. Jordan's decision to not file a speedy trial motion was reasonable.

---

[141] R. Doc. 166 at 9.
[142] *Parker v. Cain*, Civil Action No. 15-65, 2015 WL 13595034, at *13 (E.D. La. Nov. 13, 2015) (citing *Taylor v. Maggio*, 727 F.2d 341, 347-48 (5th Cir. 1984) ("the failure to present a particular argument or evidence is presumed to have been the result of strategic choice.")) *adopted by* 2017 WL 4049598 (E.D. La. Sept. 13, 2017).
[143] 18 U.S.C. § 3161(h)(7)(B).
[144] R. Doc. 30 at 2; R. Doc. 46 at 2.

With respect to Petitioner's claim that Mr. Jordan was deficient in failing to file a motion for recusal, the record shows no grounds for recusal existed. The existence of a contempt charge for violating a court's order alone is insufficient to warrant recusal.[145] Further, and in any event, "counsel's decision to not file a motion to recuse the trial judge . . . would be presumed to be the result of a conscious and informed strategy."[146] Although Petitioner feels her sentence was unfair, she "has yet to point to any record evidence (and the Court has found no such evidence) of any unfair rulings or statements from the judge so as to call into question the overall fairness of [the proceedings]."[147]

Moreover, even assuming Mr. Jordan was ineffective in filing a motion to reopen the bail hearing or failing to file motions for a speedy trial or for recusal, Petitioner has not carried her burden in establishing she was prejudiced by Mr. Jordan's actions. A petitioner must affirmatively prove that, but for counsel's ineffectiveness, she would not have pleaded guilty but would have insisted upon going to trial.[148] In this case, Petitioner does not even allege—let alone affirmatively prove—she would have insisted on going to trial but for Mr. Jordan's ineffectiveness. The closest Petitioner gets to alleging she would have insisted on going to trial but for Mr. Jordan's ineffectiveness is her statement that "but for counsel['s] ineffective assistance[] the result of this case would have been very different."[149] The Court does not find from this statement that Petitioner unequivocally

---

[145] *See, e.g.*, *United States v. Allen*, 587 F.3d 246, 252-53 (5th Cir. 2009) ("As to the statement that the [defendants] were in criminal contempt as far as the trial judge was concerned, the record does not support the conclusion that the district court prejudged the case."); *see also United States v. Beaulieu*, Crim. Action No. 18-108, 2018 WL 5111995, at *10 (E.D. La. Oct. 19, 2018) ("[The defendant's] argument that the Court has prejudged any relevant issue in the present case is demonstrably false. The Court has only held that [the defendant] may possibly be subject to a sentence of more than six months if convicted of contempt. . .").

[146] *Medley v. Stephens*, No. 2:07-CV-051, 2013 WL 3989070, at *29 (N.D. Tex. Aug. 5, 2013)

[147] *Id.* (citing *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).

[148] *Armstead*, 37 F.3d at 206.

[149] R. Doc. 161 at 62.

intended to allege she would have insisted on going to trial but for counsel's ineffectiveness. As a result, Petitioner has failed to prove Mr. Jordan's actions prejudiced her.

The Court turns to Petitioner's claim that Mr. Jordan and Mr. Thompson-Hicks were ineffective in preparing and pursuing her motion to suppress. Specifically, Petitioner alleges Mr. Jordan erred by including incorrect dates in the motion to suppress.[150] She alleges Mr. Thompson-Hicks erred by failing to obtain her client file from Mr. Jordan in preparing the motion to suppress[151] and by encouraging Petitioner not to pursue the motion, advising Petitioner: "you will not win the suppression of evidence hearing."[152]

Petitioner fails to establish that either Mr. Jordan or Mr. Thompson-Hicks were deficient in preparing and pursuing her motion to suppress. Instead, the record reflects that both attorneys acted objectively reasonably. Mr. Jordan prepared the motion at Petitioner's "behest" and "pursuant to her specific instructions."[153] Although Petitioner alleges Mr. Jordan included incorrect dates in the motion to suppress, this allegation is debunked by the fact that Mr. Jordan clearly corrected the wrong dates, per Petitioner's edits to the draft motion, before filing the motion.[154]

By arguing that Mr. Thompson-Hicks was ineffective in failing to obtain the client file Mr. Jordan made in preparing for the motion to suppress, Plaintiff in effect argues Mr. Thompson-Hicks failed to investigate her claims. "A defendant who alleges a failure to investigate on the part of [her] counsel must allege with specificity what the

---

[150] *Id.* at 7.
[151] *Id.* at 20-21.
[152] *Id.*
[153] R. Doc. 76-1 at 2.
[154] *Compare* R. Doc 161-4 at 10-13 (draft motion with Petitioner's edits correcting dates) with R. D. 76-1 (filed motion).

investigation would have revealed and how it would have altered the outcome of the trial."[155] Petitioner does not specify what Mr. Thompson-Hicks would have discovered had he obtained Mr. Jordan's file nor how this information would have helped Petitioner. As the Government points out in its response:

> Mr. Thompson-Hicks likely would not have found any factual support for Nevers's motion: Mr. Jordan himself stated that Nevers specifically instructed him on what arguments to make in the suppression motion and 'insisted that I make legal and factual arguments that are tenuous at best and frivolous at worst.' Rec. Doc. 161-5 at 3.[156]

Further, Petitioner does not allege how Mr. Thompson-Hicks was unreasonable in advising Petitioner she was unlikely to win the motion to suppress. Instead, Petitioner alleges Mr. Thompson-Hicks informed her "he could not corroborate anything in the motion."[157] This shows Mr. Thompson-Hicks was objectively reasonable in advising Petitioner her chances of winning a baseless motion (or, at best, a motion without any corroborative evidence) was weak.

As to *Strickland*'s prejudice prong, "[w]here a defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must prove that [her] Fourth Amendment claim is meritorious and that there is reasonable probability that [the defendant would not have pleaded guilty] absent the excludable evidence in order to demonstrate actual prejudice."[158] Neither the Supreme Court nor the Fifth Circuit has given much guidance on what qualifies as "meritorious." Although the meaning of "meritorious" "suggests [the] [m]ovant must show a strong

---

[155] *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982); *United States v. Lewis*, 786 F.2d 1278 (5th Cir. 1986); *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)).
[156] R. Doc. 166 at 18.
[157] R. Doc. 161 at 20-21.
[158] *United States v. Alanis*, 88 F. App'x. 15, 17 (5th Cir. 2004) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

likelihood" of success,[159] the Fifth Circuit has stated "meritorious" means "an appreciable chance of success,"[160] which may be a less stringent standard. Even under the less stringent "appreciable chance" standard, Petitioner's allegations are insufficient. Petitioner does not allege her motion to suppress would have been successful if fully pursued. Nor does the record reveal any clear deficiencies in the searches and seizures in this case that would create an "appreciable chance of success" on Petitioner's Fourth Amendment claims.

Moreover, at no point in her motion does Petitioner actually allege she would have pleaded differently but for her counsel's actions surrounding the motion to suppress. At most, she alleges "but for counsel['s] ineffective assistance[] the result of this case would have been very different."[161] This falls short of alleging Petitioner would have insisted on going to trial instead of pleading guilty. Similarly, Petitioner's allegation that she believes the Court "would [not] have taken her plea" if Petitioner had been permitted to speak at her re-arraignment[162] is not equivalent to alleging Petitioner would have insisted on going to trial but for her counsel's alleged errors.[163] Further, and in any event, the record reflects the Court never prevented Petitioner from speaking at her re-arraignment.[164] To the contrary, the Court provided Petitioner with multiple opportunities to speak during her re-arraignment, asking Petitioner questions to ensure she had entered into the Plea Agreement knowingly and voluntarily.[165]

---

[159] *Ratliff v. United States*, MO–10–CV–101, MO–08–CR–123(2), 2011 WL 13286476, at *3 (W.D. Tex. Oct. 28, 2011), *adopted by* 2013 WL 12350238 (W.D. Tex. July 3, 2013).
[160] *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008).
[161] R. Doc. 161 at 62.
[162] *Id.* at 23.
[163] *Id.*
[164] R. Doc. 152.
[165] *Id.*

## B.      Re-arraignment

Petitioner alleges Mr. Thompson-Hicks advised her she would receive three years and "credit for time served" if she accepted the plea deal.[166] In effect, Petitioner alleges Mr. Thompson-Hicks rendered ineffective assistance by promising Petitioner a sentence of three years if she pleaded guilty.

To establish prejudice in a case involving a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[167] "When a defendant alleges [her] counsel's deficient performance led [her] to accept a guilty plea rather than go to trial, [courts] do not ask whether, had [s]he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."[168] "[The courts] instead consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'"[169] "[W]hen a defendant claims that [her] counsel's deficient performance deprived [her] of a trial by causing [her] to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial.'"[170] Such errors include those that "affect [the defendant's] understanding of the consequences of pleading guilty."[171]

Although a guilty plea may be invalid if induced by defense counsel's unkept promises, "a defendant ordinarily will not be heard to refute her testimony given at a plea

---

[166] R. Doc. 161 at 21.
[167] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[168] *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citations and internal ellipses omitted).
[169] *Id.* (quoting *Roe v. Flores–Ortega*, 528 U.S. 470, 483 (2000)).
[170] *Id.* (quoting *Hill*, 474 U.S. at 59).
[171] *Id.* (citing *Hill*, 474 U.S. at 59).

hearing while under oath."[172] "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."[173] To obtain relief on the basis of alleged promises "though inconsistent with representations she made in open court when entering her guilty plea," a petitioner must prove: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."[174] "If the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue."[175] "If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary."[176] In this case, Petitioner's 2255 Motion does not include any affidavit, attestation, declaration, sworn statement or any other independent indicia of the likely merits of her allegations. Accordingly, an evidentiary hearing is not necessary.

In open court, Petitioner declared Mr. Thompson-Hicks had not made any promises to her regarding her sentence:

> THE COURT: Have the sentencing guidelines applicable to your case been explained to you by your counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> . . .

---

[172] *Cervantes*, 132 F.3d at 1110 (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)).
[173] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).
[174] *Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).
[175] *Id.*
[176] *Id.* (citing *United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988) (per curiam); *United States v. Raetzsch*, 781 F.2d 1149, 1152 (5th Cir. 1986)).

THE COURT: Mr. Thompson-Hicks, other than rough estimates of the sentencing guidelines, have you made any representations to Ms. Nevers as to the sentence I will impose?

MR. THOMPSON-HICKS: No, Your Honor.

THE COURT: Ms. Nevers, to the best of your knowledge is what your attorney just said correct?

THE DEFENDANT: Yes.

THE COURT: Do you understand that any discussions with your attorney or anyone else regarding sentencing guidelines have been merely rough estimates and that the Court is not bound by those discussions?

THE DEFENDANT: Yes, ma'am.

THE COURT: Has anyone connected with the government, anyone connected with any law enforcement agency or anyone else at any time, other than those rough estimates of the sentencing guidelines, made any prediction or promise to you as to what your sentence will be?

THE DEFENDANT: No, ma'am.[177]

These declarations made in open court carry a strong presumption of verity.[178] Petitioner's allegations in her 2255 Motion confirm Mr. Thompson-Hicks did not promise Petitioner she would receive a three-year sentence by pleading guilty. Rather, Petitioner alleges Mr. Thompson-Hicks "advised" her to plead guilty and "take the three years," which represents the maximum possible sentence that could be imposed on Petitioner in the event of a conviction with respect to each of the four counts of conviction and thus the lowest sentence Mr. Thompson-Hicks predicted Petitioner could receive if she plead guilty rather than proceeding to trial.[179] Further, Petitioner does not allege Mr. Thompson-Hicks promised her sentences would be run concurrently, but rather alleges Mr. Thompson-Hicks told Petitioner: "I have never seen this judge run no one [sic]

---

[177] R. Doc. 152 at 8-9.
[178] *See Blackledge*, 431 U.S. at 74.
[179] R. Doc. 161 at 21.

sentence consecutively."[180] Such statements constitute permissible "prediction[s] or statement[s] of probability" as opposed to an impermissible "definite and firm assurance."[181] As a result, Petitioner's presents no evidence to surmount the "formidable barrier" presented by Petitioner's own open court assertions there had been "no promises" about her sentence, and instead Petitioner's own allegations corroborate Petitioner's open court assertions. Moreover, at Petitioner's sentencing, prior to imposing Petitioner's sentence, the Court explained that under the USSG, the "maximum term of imprisonment is 3 years as to each count" and the Court could run the sentences for Petitioner's offenses consecutively or concurrently.[182] The Court then provided Petitioner an opportunity to be heard before the Court imposed her sentence.[183] Petitioner did not inform the Court she had been promised her sentences would be run concurrently.[184]

In addition, Petitioner's 2255 Motion fails to establish prejudice on its face. A "bare allegation" that a petitioner "would not have pleaded guilty but would have insisted upon going to trial" but for her counsel's ineffectiveness is "not sufficient to establish prejudice."[185] In this case, Petitioner does not even allege she would have insisted on going to trial but for her attorney's alleged promises regarding her sentence. Although Petitioner states she allowed her attorney to "convince her to accept the plea offer" and she "told [Mr. Thompson-Hicks] she wanted to take [her case] to trial,"[186] these statements fall short of constituting even a bare allegation that Petitioner would not have

---

[180] *Id.* at 24.
[181] *See Harmason*, 888 F.2d at 1532
[182] R. Doc. 151 at 5.
[183] *Id.* at 7.
[184] Further, the PSR provided: "the advisory guideline imprisonment range is 84 to 105 months." R. Doc. 128 at 27. At her sentencing, Petitioner confirmed she had received a copy of the PSR and had an opportunity to read it prior to the sentencing. R. Doc. 151 at 3.
[185] *Armstead*, 37 F.3d at 210.
[186] R. Doc. 161 at 24-25.

pled guilty and would have insisted on proceeding to trial but for Mr. Thompson-Hicks's alleged promises regarding her sentence. Similarly, Petitioner does not explain how proceeding to trial would have produced a more favorable result than pleading guilty. Rather, as the Government points out in its response:

> In the signed factual basis supporting her guilty plea, Nevers admitted that she prepared false tax returns on behalf of her clients in express violation of a court order, to which she consented, barring her from preparing tax returns. Rec. Doc. 110 at 4. Had Nevers's case proceeded to trial, the government would have introduced, among other things, testimony from Nevers's clients, along with individual income tax returns, IRS filing records, and bank records proving Nevers falsely prepared returns on her clients' behalf, and in direct violation of this Court's injunction. Rec. Doc 110 at 5.[187]

Further, by pleading guilty, Petitioner received a three-point reduction for acceptance of responsibility that resulted in a reduced USSG range of 84 to 105 months,[188] of which she was sentenced to the lowest end of the range. Without this three-point reduction, Petitioner's USSG range would have been 110 to 137 months.[189]

Petitioner fails to establish Mr. Thompson-Hicks promised her a lower sentence and that, but for the alleged promise, she would have proceeded to trial and received a lower sentence. As a result, Petitioner is not entitled to relief on her claim of ineffective assistance of counsel for promising Petitioner a sentence of three years.

### C.     Sentencing

Petitioner also asserts a claim of ineffective counsel during sentencing. She alleges Mr. Thompson-Hicks failed to adequately represent her by failing to argue for a reduction in the tax loss in her presentence investigation report, which in turn increased her USSG range for sentencing.[190] Petitioner also alleges Mr. Thompson-Hicks failed to adequately

---

[187] R. Doc. 166 at 14 n.1.
[188] R. Doc. 128 at 14.
[189] *See id.*
[190] R. Doc. 161 at 27.

represent her medical history as a mitigating factor because he failed to obtain Petitioner's medical records.[191] However, Petitioner later alleges Mr. Thompson-Hicks did obtain her medical records, but forged her signature to obtain the records.[192]

With respect to a habeas petition alleging ineffective performance at sentencing, the Fifth Circuit has explained that a petitioner must demonstrate her counsel failed to "research facts and law and raise meritorious arguments based on controlling precedent" to meet *Strickland's* deficiency prong.[193] Counsel's failure "to raise an objection whose favorable resolution is foreclosed by existing law" does not render assistance ineffective.[194] In this case, Petitioner agreed to the tax loss amount in her plea agreement[195] and, accordingly, Mr. Thompson was reasonable in not arguing for a reduction in the tax loss amount at sentencing. Further, although Mr. Thompson-Hicks did not file Petitioner's medical records on the record, Mr. Thompson-Hicks filed a sentencing memorandum in which he argued for a reduced sentence based on several factors, including Petitioner's medical condition.[196] In the sentencing memorandum, Mr. Thompson-Hicks explained why he was unable to obtain Petitioner's medical records, despite diligent efforts to do so:

> Defense Counsel has request records of Mrs. Nevers' medical treatment from Nelson Coleman Correctional Center. While the medical department confirmed ongoing medical issues, they have not provided any records in response to counsel's request.[197]

---

[191] *Id.* at 29-32.
[192] *Id.* at 32.
[193] *United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009) (citing *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003)).
[194] *See id.*
[195] R. Doc. 111 at 2.
[196] R. Doc. 132.
[197] *Id.* at 4 n.1.

Petitioner further fails to establish any prejudice resulted from Mr. Thompson-Hicks's alleged sentencing failures. The Fifth Circuit has long recognized that "to show prejudice, a defendant "must demonstrate a reasonable probability that, but for [her] counsel's actions, he would have received a significantly less harsh sentence."[198] Petitioner insists Mr. Thompson-Hicks failed to "lower her tax loss," but she does not allege how the tax loss figure could have been lowered, nor how a lower tax loss would have resulted in a lower sentence. Similarly, Petitioner does not allege how her medical records—in addition to the information already provided regarding Petitioner's medical conditions in the sentencing memorandum Mr. Thompson-Hicks filed—would have improved her sentence, which was at the bottom of the USSG range.

Because Petitioner has not carried her burden in establishing any of her ineffective assistance of counsel claims, she is not entitled to relief under § 2255.

### CONCLUSION

**IT IS ORDERED** that Petitioner Shawanda Nevers' 2255 Motion is **DENIED.**

**New Orleans, Louisiana, this 27th day of December, 2019.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[198] *United States v. Grammas,* 376 F.3d 433, 439 (5th Cir. 2004).